# EXHIBIT   B

                              STATE OF MICHIGAN

                    IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

_____
GAVRILIDES MANAGEMENT COMPANY,
                    Plaintiff,
vs.                                             File No. 20-258-CB

MICHIGAN INSURANCE COMPANY,
          Defendant.

_____/


              DEFENDANTS MOTION FOR SUMMARY DISPOSITION
      BEFORE THE HONORABLE JOYCE DRAGANCHUK, CIRCUIT COURT JUDGE
              LANSING, MICHIGAN – WEDNESDAY, JULY 01, 2020



APPEARANCES:
For the Plaintiff:              Matthew J. Heos-P73786
                               3452 East Lake Lansing Road
                               East Lansing, Michigan 48823
                               517-256-4240


For the Defendant:             Henry Emrich-P29948
                               2025 East Beltline Avenue SE-#600
                               Grand Rapids, Michigan 49546
                               616-285-0143


Recorded/transcribed by:       Susan C. Melton, CER 7548
                               Certified Electronic Reporter
                               (517) 483-6500 x6703

1

TABLE OF CONTENTS

2

3

4        WITNESSES                                          PAGE

5        None.

6

7

8

9        EXHIBITS

10       None admitted.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

1          Lansing, Michigan

2          Wednesday, July 01, 2020

3          2:58:57 PM

4          THE COURT: This is, pardon me if I massacre

5     this, Gavri--, Gavrilides Management Company, et al versus

6     Michigan Insurance Company, docket number 20-258-CB. And

7     this is the time set for Defendant Michigan Insurance

8     Company's Motion for Summary Disposition. And just for the

9     record, could I have your appearances, please?

10          MR. HEOS: Yes, your Honor. Matthew Heos and Nick

11    Gavrilides is here in the courtroom also with me. He is

12    the owner of the immediate plaintiff company's.

13          MR EMRICH: Henry Emrich on behalf of Michigan

14    Insurance Company, your Honor and my assistant Chenney

15    Ward.

16          THE COURT: Okay, thank you. And your motion, Mr.

17    Emrich, if you wish to go ahead.

18          MR. EMRICH: Thank you, your Honor. I am going to

19    assume that the Court has read all of the pleadings in

20    this case, so I'll try not to belabor some of the points.

21    I think the, the key fact that we need to focus on is that

22    as we've argued is that there's no question here but the

23    policies that insure Mr. Gavrilides properties against,

24    against direct physical loss or damage to the property and

25    contrary, any claim with the policy benefits in question

3

1       this business income coverage is illusory, the policy in

2       question here clearly provides that for the business

3       coverage, the business income coverage to apply and, and

4       most of the other primary coverages under their policy,

5       there must be a direct physical loss of or damage to the

6       insured property in order for it to apply.

7               And I think it's important as we'll discuss

8       later in our argument depending on what Mr. Heos has to

9       say, why this is important, we must focus on the fact that

10      there must be direct physical loss or damage to the

11      insured property and not direct physical loss of use of or

12      damage to the property as has been suggested by Mr.

13      Gavrilides and his attorney in order for the coverage at

14      issue to apply.

15              While I acknowledge, your Honor, that this is a

16      somewhat unique, extraordinary if you will, matter to be

17      filing at this point in the proceedings as our initial

18      pleading; I think it's important to understand that when

19      we look at Mr. Gavrilides complaint, it does not contain

20      one single allegation that this insured property has in

21      any way been damaged or lost.  To the contrary, the

22      allegations in the complaint affirmatively allege that the

23      plaintiff business interruption claim is based on the

24      "Stay at Home" orders of Governor Whitmer. There is no

25      allegation of any kind that the property in question has

4

1      in any way been damaged, lost or anything of the sort.

2            Given that this motion has been brought under

3      2.116(c)(10), plaintiff must produce some evidence to

4      contradict the uncontroverted facts that have been alleged

5      not only in the complaint, but in the affidavit submitted

6      Mr. Gavrilides and in any of the other materials that Mr.

7      Heos has attached to his response as, as indicated, most

8      importantly, the affidavit of Mr. Gavrilides that

9      reiterates the admissions in the complaint that there has

10     not been any loss of or damage to either of the properties

11     for which they seek coverage.

12           The insureds property today exists in the very

13     same condition as it existed the day prior to the

14     effective date of the "Stay at Home" order.  They have not

15     been lost, they have not been damaged, they have not

16     required any repairs because of any damage to those

17     properties. The business operation, its, its operation as

18     a restaurant today is, is the same as the day prior to the

19     effective date of the order, albeit with some modifi-

20     cations that had been required to avoid grouping and to

21     maintain social distancing in, in a sense improvements to

22     the real estate.  Not repairs, you know, and, and it's

23     been maintained as a take-out, take-out operation at least

24     until recently when they resumed the dining operation.

25     There has been no loss of or damage to either building

1       that has prevented the plaintiff from operating as a

2       restaurant or entering it for that matter if--, as they

3       have. If plaintiffs wanted to sell either building today,

4       they could do so. And while plaintiffs have provided some

5       speculative evidence about the decreased value of that

6       property, although, as I read Mr.--, as I read the

7       materials that Mr. Heos kindly attached to his response,

8       the fact of the matter is it pointed out in that article

9       was that while they operation of a commercial property may

10      get harder, it's not impossible to operate it in the

11      future under our new normal.

12          Because plaintiffs complaint, the affidavit, the

13      other information that has been provided to your Honor

14      provides no evidence of any damage to that property.

15      Plaintiffs could never prove that either property suffered

16      any direct physical loss from the imposition of Governor

17      Whitmer's emergency order.  And thus, could never recover

18      business interruption coverage under this policy based on

19      the facts that have been presented to the Court. The same

20      holds true under the business cover, income coverage, if a

21      civil authority prevents or prohibits access to either

22      property because of direct physical damage to an adjacent

23      or nearby property for the very same reason.  There has

24      been no direct physical loss or damage to any adjacent

25      property that has been alleged, that has been provided to

1     the Court in Mr. Heos response. And frankly, when you look

2     at the order that they have, that is at issue in this

3     case, there's nothing there that prevents access to Mr.

4     Gavrilides properties whatsoever.

5             In summary, your Honor, there are no facts

6     alleged in the complaint or in any of the materials that

7     I've looked at, including Mr. Gavrilides affidavit, that

8     shows there has been direct physical loss of or damage to

9     the insured property. And for those reasons, your Honor,

10    we believe that our motion--, for those reasons alone, we

11    believe our motion for summary disposition should be

12    granted.

13            I'd just like to make a couple of additional

14    points before I shut up. I really believe summary

15    disposition is warranted on this basis alone and I would

16    turn the Court to the case that we've discussed in our, in

17    our brief, your Honor, that's referred to Universal

18    Insurance Production versus Chubb. And that's the decision

19    of the Eastern District of Michigan involving a claim that

20    involved insured property. It was damaged by a pervasive

21    odor that developed in the property as a result of mold

22    that grew in the property because of some water seepage.

23    And why that case is important is because it discusses the

24    Michigan Rules of Contract Interpretation, that still

25    apply today, policy language is clear and unambiguous on

1    its face, which we believe is clearly the case here that

2    states that the words and the terms of the policy should

3    be enforced utilizing plain and commonly understood

4    meanings.

5         And when I said earlier that that's important

6    when we talk about what direct physical loss of or damage

7    to property means, it means we look at those words. We

8    don't add words such as loss of use, that Mr. Heos and Mr.

9    Gavrilides have added in order to understand what we're

10   talking about here. We look at the language in the policy.

11   Every case that Mr. Heos produced your Honor, says the

12   very same thing. In Univer--, Universal, like here, the

13   policy was an 'all-risk' policy that required, like here,

14   direct physical loss or damage to the insured property in

15   order to trigger coverage unless that coverage was

16   excluded.

17        As Universal pointed out, applying a dictionary

18   meaning of direct and physical as meaning something

19   immediate or proximate as a premise to something that is

20   distant or incidental and physical meaning something that

21   has a material existence meant in the context of a loss

22   involving a contaminant that, unlike here, per the  uncon-

23   troverted allegations of the complaint and other evidence

24   produced by plaintiff in response to this motion. That in

25   order for direct physical loss of the property in this

8

1    context, the contaminant must actually alter the structure

2    integrity of the property in order to trigger coverage

3    under language that is at issue in this case.  And it

4    didn't happen in Universal, as the Court denied coverage

5    there, granted affirmed summary disposition. And

6    importantly your Honor, it hasn't even been alleged in

7    this case. Regardless of any authority to the contrary,

8    anywhere else in the country, this remains the law in our

9    courts when interpreting policy terms at issue. There is a

10   requirement that there be direct physical loss of or

11   damage to property. And the allegations produced here in

12   the complaint and the evidence that's been attached have

13   specifically acknowledged no such contamination and no

14   such damage to the property as a result of that contami-

15   nation.

16            As in Universal, your Honor, the mere presence

17   of odor or even mold was not any evidence of structural or

18   tangible damage to the insured property. And as such, no

19   direct physical loss or damage to the property had-, was

20   occurred. Here, your Honor, we have the very same thing

21   except that we have not even had any allegations of any

22   damage to the property caused by this unfortunate, this

23   horrible virus.

24            Finally, and although we do not believe the

25   Court even has to get to this point, even if we assume for

9

1       purposes of this motion that contamination occurred on

2       each premises and that somehow effected the structural

3       integrity of either building, again, neither scenario is

4       alleged. And even if it were, we do not believe under the

5       circumstances and the science that exists that it would

6       necessarily constitute direct physical loss over damage to

7       the property. The buyer's exclusion of the policy, which

8       clearly and unequivocally states that it applies to all

9       coverages and endorsement and that the company will not

10      pay for loss or damages caused by or resulting from any

11      virus, bacteria or other microorganism that induces or is,

12      is capable of inducing physical distress, illness or

13      disease. And Lord knows, that that has certainly been the

14      case with what's happened with Covid-19 throughout our

15      country.

16              Clearly, your Honor, that exclusion, again, I

17      don't believe you even have to get there, but that

18      exclusion would clearly exclude any claim here even if

19      plaintiff's could prove direct physical loss of or damage

20      to the insured property or any nearby property that

21      resulted in a civil authority issuing an order prohibiting

22      access to the property.  As of eight days ago, your Honor,

23      they have only been few jurisdictions in this country,

24      Florida and Pennsylvania, that have discussed and applied

25      this, a similar exclusion as at issue in this case and in

1    every one of those cases, the Court has enforced that

2    exclusion as written because it's clear and unambiguous.

3    Again, your Honor, for all the reasons that we've set

4    forth here today and the brief that we filed and our

5    reply, we request that the Court grant our Motion for

6    Summary Disposition at this time. Thank you.

7         THE COURT:   Thank you. Mr. Heos?

8         MR. HEOS: Thank you, your Honor and may it

9    please the Court. And obviously Mr. Emrich and I have a

10   different interpretation of direct physical loss of or

11   damage to covered properties because here the loss comes

12   from the issue of the executive order restricting use of

13   property. Physically you cannot use for, for dine-in

14   services any of the interior of the building for a period

15   of time. And a complete prohibition isn't contemplated by

16   the language of the contract, I think a limited

17   restriction also falls within the coverage. And I think

18   that if you're gonna accept the defendants argument you

19   would have to limit the meaning to destruction of the

20   physical building itself, but we know that the coverage

21   extends to non-destructive loss, civil authority being

22   one.

23        I put in example in the brief subterranean

24   pollution, you can look at asbestos or a computer virus is

25   something that would occur that there would be no physical

11

1    destruction to the property itself. The fact of the matter

2    is that Mr. Gavrilides can't use the covered properties

3    because of or he's lost rather the use of those properties

4    because of the order and it looks like that will continue

5    in some form for a while. So, I think that counsel is

6    wrong in trying to limit the scope even with the case law

7    he cited, most of which is persuasive and not binding.

8    That's number one, Judge.

9             And as for the virus exclusion itself, the only

10   case law we have relates to person to person transmission

11   of a virus at the covered property.  And I think that fits

12   more with what's going on. We see in the news that Harpers

13   in East Lansing and even the Hotcat in Kalamazoo is making

14   headlines of people contracting Covid there. But, the

15   impetus of the order was to protect public health and

16   welfare, which is the governor's duty. It's not caused by

17   a virus. It would be the same order as with the damn in

18   Midland being issued to protect public health and welfare.

19   It wasn't caused by a flood.  It was caused by the

20   Governor's duty to act and protect the people she's

21   charged with protecting and I think that's what happening.

22            Or it's distinguishable from the case and I

23   think it's Bowler, the case cited regarding the virus. And

24   I think that if you go further in accepting defendant's

25   position, then we get into the illusory promise of well if

1    the government issues an order, we're not gonna cover it

2    because any decision of a government body or group of

3    people is excluded. And so then, you get into the circle

4    in the contract where if you're going to buy into counsels

5    logic, it would make that provision illusory. And for

6    those reasons, I think that the motion should actually

7    roll back on the defendants because the language to

8    support the claim, to the extent that the Court thinks

9    there's a deficiency in my pleading and is gonna grant

10   defendants motion, I'd like Leave to Amend the Complaint.

11   But, I don't think that's the case here. And with that,

12   I'll leave it, if the Court would like to ask any

13   questions, I'm happy to take them.

14           THE COURT: I don't have any. Thank you. I'll

15   give Mr. Emrich rebuttal time.

16           MR. EMRICH: Thank you, your Honor. Your Honor,

17   what I would say is that when we talk about these cases

18   that Mr. Heos has mentioned that might provide coverage in

19   certain situations, I read those cases a little while ago

20   and I'm kind of tired reading some of these cases about

21   insurance coverage. But, the point in every one of those

22   cases is that the condition she referred to actually

23   caused damage to the property.

24           In this case, there has not been any such

25   damage. And if we look at what the coverage for business

13

1    loss or business--, the business income loss that they're

2    seeking says, it says that if the business, the coverage

3    would apply if the business operation is suspended

4    provided the suspension must be caused by the direct

5    physical loss of or damage to property. In this case, that

6    hasn't occurred. Nothing prevents Mr. Gavrilides from

7    using that property. It has been used as such. The fact

8    that there may be other coverages that may provide some

9    limited coverage, they're against what Mr. Heos is arguing

10   because clearly, if those coverages were covered under

11   this language, then why have a special coverage that

12   provides certain conditions for its application.

13          The point is, in each of those civil authority

14   cases that he talked about, the property actually

15   sustained damage. Here it didn't sustain damage. As to his

16   claim in this case, that he wants an opportunity to amend

17   his complaint if the Court feels compelled to grant my

18   motion, what is that going to accomplish? He's already

19   alleged in his complaint and his client has already signed

20   an affidavit where he no doubt put his hand up and swore

21   to the contents of that affidavit in which he said there

22   has been no damage to that property.

23          We don't create coverage by-, because somebody

24   thinks they ought to have coverage. But, that, that, that

25   whole line of cases Roy versus Continental Insurance and

14

1    some of the other cases in our, in our brief that we

2    cited, clearly supports the notion that the reasonable

3    expectation concept doesn't apply in Michigan. It just

4    doesn't cut it. There is no coverage here, your Honor.

5    That exclusion is clear. If the Court feels that there may

6    be or that there may be a situation that would give rise

7    to, but again, you have to come forward at the time that

8    you, that you respond to this motion with some evidence

9    that suggests that. That hasn't happened here. I mean even

10   when you look at the response that he's filed, he talks

11   about scenario's that have absolutely no bearing to this

12   case.

13            And you know, I'll just make one last point,

14   your Honor, you know, when I was a young Prosecutor, I had

15   the benefit of being able to argue a number of cases to

16   juries that required me to prove the defendant's guilt

17   beyond a reasonable doubt. And in those cases, I was

18   trained to listen closely to the defendant's argument and

19   had been the case where the facts were particularly

20   egregious, a defense attorney would often not even talk

21   about those facts and talk about the law. And he talked

22   about how that law was somehow created this reasonable

23   doubt in hopes of creating some confusion on the part of

24   one juror who might then find in his clients favor because

25   reasonable doubt existed. And, and in those cases, I would

15

1   make sure that when I got up in rebuttal, just as I have

2   been given the opportunity to here, I would point that out

3   to the jury and indicate to them that there's a reason for

4   that. And that's because they didn't want you to talk

5   about the facts that clearly supported conviction.

6          On the other hand, if it was a case where the

7   law, you know, or the facts may have been murky, but the

8   law was clear, the defense attorney would only focus on,

9   you know, on those facts and not talk about the law. And

10   again, I point that out to the jury there.  But, in this

11   case, you know, and there were cases back then to, like

12   our case here that were neither supported by the facts or

13   the law. Which I believe is clearly the case in this case.

14   And the defense attorney would get up and argue something

15   that to the jury that had absolutely nothing to do with

16   the case in hopes of confusing them. Just like Mr. Heos

17   has suggested by talking about these asbestos cases or

18   some of these other cases that have nothing to do with

19   this.

20          Well in this case, when you look at his

21   responsive pleading, he talks about an accident situation

22   that has absolutely no application here. Nothing to do

23   with this case. While in his argument, he starts out

24   talking about a discussion of the virus of racism and as

25   there, as there, we would point out, if we were in front

16

1    of a jury, just like I'd point out to them and I'm

2    pointing out to you, it hasn't got anything to do with

3    this case. Your Honor, the reason for that and the reason

4    for the topic of that is that he knows that neither the

5    facts or the law support his claim and nothing he could

6    file as an amendment would change that.

7         He is hoping to somehow create this little bit

8    of possibility, some scintilla that some evidence is gonna

9    pop up that shows that the property has been damaged in

10   hopes that he could trigger coverage. And as this Court

11   knows under the cases we've discussed in our brief, that

12   is not sufficient to deny summary disposition in a case

13   that clearly warrants it even at this early stage.

14        Thank you your Honor for your patience. Thank

15   you Mr. Heos, we've never met. I've heard a lot of good

16   things about you. Mr. Gavrilides, nice to have met you,

17   very sorry for the situation you're in. It's just crazy

18   all the way around. And just like having to argue this

19   case on TV is really just disconcerting for me.  But, in

20   any event, thank you your Honor for your patience.

21        THE COURT: Thank you. You're on Youtube not TV.

22   But--

23        MR. EMRICH: I meant screen.  Yeah, whatever.

24        THE COURT: Right.

25        MR. EMRICH: The screen.

17

1    THE COURT: I, I did read the briefs. I studied

2    them very carefully and I've listened to the argument of

3    counsel today. And taking all the-, that together I, I

4    note that the plaintiff speaks of and focuses on arguments

5    about access to the property, use of the property and

6    definitions of loss and damage. But, the first inquiry has

7    to start with a full look, not just isolating some words

8    or phrases from the policy. But, a full look at the

9    coverage that's provided under the policy.

10    Coverage is provided for actual loss of business

11    income sustained during a suspension of operations. The

12    policy goes on to provide the 'suspension must be caused

13    by direct physical loss of or damage to property.' And it

14    also provides 'the loss or damage must be caused by or

15    result from a covered cause of loss. The causes of loss

16    special form provides that a covered cause of loss means

17    risks of direct physical loss.'

18    So, whether we're talking about the cause for

19    the suspension of the business or the cause for the loss

20    or the damage, it is clear from the policy coverage

21    provision only direct physical loss is covered. Under

22    their common meanings and under federal case law as well,

23    that the plaintiff has cited that interprets this standard

24    form of insurance, direct physical loss of or damage to

25    the property has to be something with material existence.

1    Something that is tangible. Something according to the one

2    case that the plaintiff has cited from the Eastern

3    District, that alters the physical integrity of the

4    property.   The complaint here does not allege any physical

5    loss of or damage to the property. The complaint alleges a

6    loss of business due to executive orders shutting down the

7    restaurants for dining, for dining in the restaurant due

8    to the Covid-19 threat.

9             But, the complaint also states that a no time

10   has Covid-19 entered the Soup Spoon or the Bistro through

11   any employee or customer and in fact, states that it has

12   never been present in either location. So, there simply

13   are no allegations of direct physical loss of or damage to

14   either property. The plaintiff seems to make in the

15   briefing, at least, two arguments about the language in

16   the coverage provision and what it means.

17            The first argument is that the plaintiff says

18   coverage applies to "direct physical loss or damage to

19   property."  Even if that were the wording of the coverage

20   provision, it wouldn't save the plaintiff from the

21   requirement that the loss or damage must be physical and

22   the analysis could end right there. But, I have to go on

23   to say that this is not even the wording of the coverage

24   provision. Coverage according to the policy applies to a

25   suspension caused by "direct physical loss of or damage to

19

1     property." So, I'm not going to get into a detailed

2     analysis of the rules of grammar. But, common rules of

3     grammar would apply to make that phrase a short-cut way of

4     saying "direct physical loss of property or direct

5     physical damage to property." So, again, the plaintiff

6     just can't avoid the requirement that there has to be

7     something that physically alters the integrity of the

8     property. There has to be some tangible, i.e., physical

9     damage to the property.

10     Then the plaintiff in the briefing, at least,

11     seems to make a second argument that and this is not 100%

12     clear, but, it seems like the plaintiff is saying that the

13     physical requirement is met because people were physically

14     restricted from dine-in services. But, that argument is

15     just simply nonsense. And it comes nowhere close to

16     meeting the requirement that there's some, there has to be

17     some physical alteration to or physical damage or tangible

18     damage to the integrity of the building.

19     So, the next argument that the plaintiff makes

20     is that the virus and bacteria exclusion is vague and

21     can't apply here.  The plaintiff has not adequately

22     explained how the term virus is vague. And in fact,

23     supplies a completely workable, understandable, usable

24     definition of the word virus. The argument in this regard

25     really seems to be more that the virus exclusion doesn't

1    apply. And it goes something like this as far as I can

2    tell, first, a virus can't cause physical loss or damage

3    to property because virus' harm people, not property.

4    Second, the damage caused here was really caused by

5    actions of the civil authority to protect public health.

6    And then third, therefore, coverage for acts of any

7    person, group, organization or governmental body applies.

8    But, that argument bring us right back to the direct

9    physical loss or damage requirement.  Again, going back to

10   the cause of loss special form B, as in boy, exclusions

11   provides that acts of government are only covered when

12   they result in a covered cause of loss.  A covered cause

13   of loss, again, is direct physical loss. So, even if the

14   virus exclusion did not apply, which the plaintiff has not

15   supported that it doesn't apply, I only argue that it's

16   vague, which I reject. But, even if it did not apply, it

17   could only be coverage for governmental actions that

18   resulted in direct physical loss or damage.

19              And then, finally, the plaintiff argues that the

20   policy has a contradiction in it that renders it illusory.

21   So, the plaintiff says that the policy extends coverage

22   for governmental acts. But, then, it takes it away in the

23   causes of loss special form.  But, that's simply not true.

24   Coverage is provided for actual loss of business income

25   sustained during the suspension of operations.  However,

1     according to the coverage provision, the suspension must

2     be caused by direct physical loss of or damage to

3     property.  And governmental acts are likewise covered if

4     it results in a covered cause of loss, which is again, a

5     direct physical loss.  There is no granting of coverage

6     and then excluding the same coverage in the policy. As a

7     matter of fact, the policy is consistent throughout and

8     consistent with federal law cited by the plaintiff. It

9     requires physical loss or damage.

10          There is a virus exclusion even if plaintiff was

11    alleging, was alleging, even if there were allegations in

12    the complaint alleging actual physical loss or damage,

13    which the complaint does not do. But, there is a virus

14    exclusion that would also apply. And governmental action

15    that results in direct physical loss is covered. But

16    again, there is no direct physical loss alleged here.

17          Now, I have to address a little bit this, that

18    it was brought as a (c)(10) motion. The actually the

19    defendant hasn't provided any support by way of factual

20    support, depositions, affidavits, et cetera, for a (c)(10)

21    motion. So, if the defendant doesn't do that, then the

22    plaintiff has no burden under Maiden versus Rosewood. So,

23    there's no shifting burden until the moving party first

24    does it. But, I don't think it properly is labeled a

25    (c)(10) motion. I think it's a (c)(8) motion. Because this

1    is the motion that can be decided as a matter of law. Take

2    all the allegations in the complaint as true and examine

3    nothing more than the contract upon which the complaint is

4    based, the policy of insurance and as a matter of law, the

5    plaintiffs complaint cannot be sustained. And although the

6    plaintiff has requested a chance to amend without any

7    indication of how they would do that, there actually is no

8    factual development that could change the fact that the

9    complaint is complaining about the loss of access or use

10   of the premised due to executive orders and the Covid-19

11   virus crisis. So, there's no factual development that

12   could possibly change that or amendment to the complaint

13   that could possibly change that those things do not

14   constitute the direct physical damage or injury that's

15   required under the policy as I've outlined.

16            So, for those reasons, I am granting the

17   Defendant's Motion for Summary Disposition.  I'm doing it

18   under MCR 2.116 (c)(8). And Mr.—

19            MR. EMRICH: Thank you, your Honor.

20            THE COURT: Mr. Emrich, will you submit an order?

21            MR. EMRICH: Certainly will, your Honor.

22            THE COURT: Okay.

23            MR. EMRICH: Thank you.

24            THE COURT: Thank you.

25            MR. HEOS: Thank you very much.

23

1              THE COURT: That will conclude our hearing.

2                  (Hearing concludes at 3:32:35 PM.)

3

4

5

6

7

8

9

10       STATE OF MICHIGAN)

11                        )

12       COUNTY OF INGHAM)

13

14

15

16       I certify that that this transcript, consisting of 24

17   pages, is a complete, true, and correct transcript of the

18   proceedings and testimony taken in this case on Wednesday,

19   July 01, 2020.

20

21

22   July 09, 2020            _____

23                            Susan C. Melton-CER 7548
24                            30th Circuit Court
25                            313 West Kalamazoo Avenue
26                            Lansing, Michigan 48901
27                            517-483-6500 ext. 6703

28

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

_____

GAVRILIDES MANAGEMENT COMPANY
LLC, GAVRILIDES PROPERTY
MANAGEMENT LLC, & GAVRILIDES
MANAGEMENT WILLIAMSTON LLC,

Case No.  20-258-CB

HON. JOYCE DRAGANCHUK

        Plaintiffs,

v

MICHIGAN INSURANCE COMPANY,

        Defendant.

| | |
|---|---|
| Matthew J. Heos (P73786) | Henry S. Emrich (P29948) |
| THE NICHOLS LAW FIRM, PLLC | SECREST WARDLE |
| Attorney for Plaintiffs | Attorneys for Defendant |
| 3452 E. Lake Lansing Road | 2025 East Beltline Ave SE, Suite 600 |
| East Lansing, MI  48823 | Grand Rapids, MI 49546 |
| 517-256-4240 | 616-285-0143 |
| mheos@nicholslaw.net | hemrich@secrestwardle.com |

## ORDER GRANTING DEFENDANT MICHIGAN INSURANCE COMPANY'S MOTION FOR SUMMARY DISPOSITION

At a session of said Court, held in the
City of Mason, County of Ingham,
State of Michigan, on  *July 21, 2020*

PRESENT:   Hon. JOYCE DRAGANCHUK
            CIRCUIT COURT JUDGE

This matter having come before the Court on Defendant Michigan Insurance Company's Motion for Summary Disposition, and the Court having reviewed the briefs from both parties and heard oral argument from both parties in open court, and the Court being otherwise fully advised in the premises:

Defendant Michigan Insurance Company's Motion for Summary Disposition has been GRANTED for the reasons stated from the bench on the record.

3

**IT IS SO ORDERED** that the judgment in favor of Defendant is entered as a matter of law pursuant to MCR 2.116(c)(8), and that this matter is dismissed with full prejudice.

This Order resolves the last pending claim and closes the case.

Hon. JOYCE DRAGANCHUK
CIRCUIT COURT JUDGE    P-39417

6146558_1

SECREST WARDLE

4