**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUJAMCYN THEATERS LLC, | Civil Action No. 1:20-CV-06781-ALC |
| Plaintiff, | |
| v. | **ORAL ARGUMENT REQUESTED** |
| FEDERAL INSURANCE COMPANY and PACIFIC INDEMNITY COMPANY, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS AND TO STRIKE AFFIRMATIVE DEFENSES AGAINST PACIFIC INDEMNITY COMPANY**

**PASICH LLP**

By: __/s/ Jeffrey L. Schulman__
    Jeffrey L. Schulman (3903697)
    Stephen Wah (5607437)
    286 Madison Avenue, Suite 401
    New York, New York 10017
    Telephone: (212) 686-5000
    JSchulman@PasichLLP.com
    SWah@PasichLLP.com

       -and-

    Kirk Pasich (*pro hac vice*)
    10880 Wilshire Boulevard, Suite 2000
    Los Angeles, California 90024
    Telephone: (424) 313-7850
    KPasich@PasichLLP.com

    *Attorneys for Jujamcyn Theaters LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS .............................................................................................. 3

I.      THE POLICY ....................................................................................................... 3

II.     THE COVID-19 PANDEMIC AND SUBSEQUENT CIVIL AUTHORITY
ORDERS............................................................................................................... 4

III.    PACIFIC'S FAILURE TO FULLY HONOR ITS CONTRACTUAL
OBLIGATIONS.................................................................................................... 5

ARGUMENT.................................................................................................................... 5

I.      STANDARD OF REVIEW .................................................................................. 5

     A.    Legal Standard Governing A Motion for Judgment On The Pleadings ..................... 5

     B.    New York Rules Governing Insurance Policy Construction and Interpretation........ 6

II.     JUJAMCYN SUFFERED MULTIPLE LOSSES UNDER THE POLICY ...................... 8

     A.    "Loss" Is Undefined and Ambiguous........................................................... 8

     B.    Pacific's Interpretation Is Inconsistent with the Policy's Terms and Renders
Other Policy Terms Superfluous ................................................................. 10

     C.    Pacific's Interpretation of The Term "Occurrence" Conflicts with Jujamcyn's
Reasonable Expectations ........................................................................... 12

III.   THE NINTH, ELEVENTH, TWELFTH, THIRTEENTH, FIFTEENTH AND
SIXTEENTH AFFIRMATIVE DEFENSES ARE PER SE IMPROPER,
IMPLAUSIBLE, AND WAIVED AS A MATTER OF LAW........................................ 14

     A.    Affirmative Defenses That Are Waived ...................................................... 14

     B.    Affirmative Defenses That Are "Implausible" ............................................. 16

CONCLUSION.............................................................................................................. 17

**Cases**

*10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*,
  21 F.4th 216 (2d Cir. 2021) ...............................................................................1, 3

*Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*,
  60 N.Y.2d 390 (1983)...........................................................................................12

*Albert J. Schiff Assocs., Inc. v. Flack*,
  51 N.Y.2d 692, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980)...................................15

*Appalachian Ins. Co. v. Gen. Elec. Co.*,
  8 N.Y.3d 162, 831 N.Y.S.2d 742 (2007) .........................................................10, 11

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*,
  531 F. Supp. 2d 620, 622-23 (S.D.N.Y. 2008) ......................................................6

*Benjamin Shapiro Realty Co. v. Agric. Ins. Co.*,
  287 A.D.2d 389, 389, 731 N.Y.S.2d 453 (N.Y. App. Div. 2001) .........................15

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)....................................................................................6

*Chicago's Preschool Acad. of Learning, Inc. v. West Bend Mut. Ins. Co.*,
  No. 20-CV-04044, 2020 WL 5702145 (N.D. Ill. Sept. 24, 2020) .........................14

*Cragg v. Allstate Indem. Corp.*,
  17 N.Y.3d 118, 926 N.Y.S.2d 867, 950 N.E.2d 500 (2011)................................6, 7

*Danaher Corp. v. Travelers Indem. Co.*,
  10-CV-121 (JPO), 2020 WL 6712193 (S.D.N.Y. Nov. 16, 2020)........................11

*Dataflow, Inc. v. Peerless Ins. Co.*,
  No. 3:11-cv-1127, 2015 WL 6023675 (N.D.N.Y. Oct. 15, 2015)........................10

*Dean v. Tower Ins. Co. of N.Y.*,
  19 N.Y.3d 704, 708, 955 N.Y.S.2d 817 (2012) ......................................................6

*Dish Network Corp. v. Ace Am. Ins. Co.*,
  431 F. Supp. 3d 415, 423 (S.D.N.Y. 2019).............................................................7

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  279 F. Supp. 2d 235 (S.D.N.Y. 2003).....................................................................16

*E.E.O.C. v. Kelley Drye & Warren, LLP*,
    2011 WL 3163443 (S.D.N.Y. July 25, 2011) ...........................................................6

*Foy v. D.B. Frame Shop, Ltd.*,
    210 A.D.2d 162, 620 N.Y.S.2d 356 (N.Y. App. Div. 1994) ....................................9

*Gen. Accident Ins. Grp. v. Cirucci*,
    46 N.Y.2d 862, 864, 414 N.Y.S.2d 512, 387 N.E.2d 223 (1979)..........................15

*Glassalum Int'l Corp. v. Albany Ins. Co.*,
    No. 03 Civ. 9166(DC), 2005 WL 1214333 (S.D.N.Y. May 23, 2005)....................9

*Great Am. Ins. Co. v. Houlihan Lawrence, Inc.*,
    449 F. Supp. 3d 354 (S.D.N.Y. 2020)..................................................................6, 7

*Horowitz v. Am. Int'l Grp., Inc.*,
    No. 09 Civ. 7312(PAC), 2010 WL 3825737 (S.D.N.Y. Sept. 30, 2010)..................9

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*,
    252 F.3d 608, 617 (2d Cir. 2001).........................................................................7

*Jablonski v. Special Counsel, Inc.*,
    1:16-cv-05243 (ALC), 2020 WL 1444933 (S.D.N.Y. Mar. 25, 2020)...................16

*Juster Assocs. v. City of Rutland, Vt.*,
    901 F.2d 266 (2d Cir. 1990)...................................................................................6

*Luria Bros. & Co. v. Alliance Assurance Co.*,
    780 F.2d 1082, 1090 (2d Cir. 1986).....................................................................15

*Martin, Shudt, Wallace, Dilorenzo & Johnson v. Travelers Indem. Co. of Conn.*,
    No. 1:13-CV-0498, 2014 WL 460045 (N.D.N.Y. Feb. 5, 2014)..............................8

*Matter of Mostow v. State Farm Ins. Cos.*,
    88 N.Y.2d 321, 645 N.Y.S.2d 421, 668 N.E.2d 392 (1996).....................................9

*Nat'l Football League v. Vigilant Ins. Co.*,
    36 A.D.3d 207, 824 N.Y.S.2d 72 (N.Y. App. Div. 2006) ......................................7

*Newmont Mines Ltd. v. Hanover Ins. Co.*,
    784 F.2d 127 (2d Cir. 1986)...................................................................10, 11, 12

*OTC Int'l., Ltd. v. All Those Underwriters At Lloyd's of London*,
    781 N.Y.S.2d 626 (Sup. Ct. Queens Cnty. Jan. 29, 2004).......................................9

*Patel v. Contemporary Classics of Beverly Hills*,
    259 F.3d 123 (2d Cir. 2001)...................................................................................5

*Roberts v. Babkiewicz*,
    582 F.3d 418 (2d Cir. 2009)..................................................................6

*Rockland Exposition, Inc. v. Great Am. Assurance Co.*,
    746 F. Supp. 2d 528 (S.D.N.Y. 2010).................................................14

*Roman Cath. Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    21 N.Y.3d 139, 969 N.Y.S.2d 808, 991 N.E.2d 666 (2013)................11

*State of New York v. AMRO Realty Corp.*,
    936 F.2d 1420 (2d Cir. 1991)..............................................................15

*Venigalla v. Penn Mut. Ins. Co.*,
    130 A.D.2d 974, 515 N.Y.S.2d 939 (N.Y. App. Div. 1987) ..................8

*In re Viking Pump, Inc.*,
    27 N.Y.3d 244, 33 N.Y.S.3d 118, 52 N.E.3d 1144 (2016).....................8

*Wachovia Bank v. Schmidt*,
    546 U.S. 303 (2006).............................................................................10

*Westview Assocs. v. Guar. Nat'l Ins. Co.*,
    95 N.Y.2d 334, 717 N.Y.S.2d 75, 740 N.E.2d 220 (2000).....................7

*Woods v. Gen. Accident Ins.*,
    292 A.D.2d 802, 738 N.Y.S.2d 791 (N.Y. App. Div. 2002) ...............7, 8

*World Trade Center Properties, L.L.C. v. Hartford Fire Insurance Co.*,
    345 F.3d 154 (2d Cir. 2003)................................................................10

**Statutes**

Federal Rule of Civil Procedure 12 .............................................................5, 6

# PRELIMINARY STATEMENT

SARS-CoV-2, COVID-19, the subsequent actions and orders of state and local civil authorities, guidance from the Centers for Disease Control, and the need to mitigate losses and damage left the Broadway theater industry in dire circumstances. Virtually every other business and industry could operate in some capacity and generate some revenue during the pandemic. Jujamcyn and the Broadway theater industry had no alternative means to operate their businesses in whole or in part.

Jujamcyn owns and operates five Broadway theaters, making it one of the largest theater owners on Broadway. Before March 12, 2020, in any week when shows were playing in all of its theaters, Jujamcyn could host more than 48,000 people from around the globe. On that date, the Governor of New York issued an executive order directing "any theater seating five hundred or more attendees for a live performance in [the City of New York]" to close by 5:00 PM. As of that day, all the lights in Jujamcyn's theaters went dark and would remain so for more than a year.

Jujamcyn and Pacific Indemnity Company considered this possibility when Jujamcyn paid significant premiums for a "performing arts" policy that specifically insured all of Jujamcyn's theaters for the "**business income loss** you incur due to the necessary cancellation, interruption or postponement of one or more of your performances."[1] Pacific actively marketed this coverage to the theater industry telling prospective insureds:

---

[1] Unlike many policies at the center of COVID-19 coverage litigation around the country (including the Federal policy sold to Jujamcyn at issue in this case but not subject to this motion), the Pacific policy does not require the insured to sustain "direct physical loss or damage" to insured property. Jujamcyn does not seek judgment on the pleadings as to the Federal policy and thus does not address *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd*., 21 F.4th 216 (2d Cir. 2021) in this motion. *See* D.E. 35, 40.

***When the show can't go on***

***When some Broadway shows were shuttered by the pandemic, we covered***

***their lost income – so they can get back on stage when it's safe.***[2]

The policy provides a $250,000 "**LIMIT OF LIABILITY (EACH LOSS)"** and, as noted, specifically insures all of Jujamcyn's theaters. But instead of honoring its obligations, and paying for **EACH LOSS,** Pacific paid a fraction of what it owes based on an unreasonable interpretation of the policy. Pacific seeks to limit its coverage obligation by implausibly arguing that "the COVID-19 pandemic" constitutes one **LOSS** so that Pacific need make only one $250,000 payment rather than covering the **LOSS** at each of the theaters.

Pacific grounds its improper denial on words and phrases in the policy that are undefined. According to the policy itself, these undefined terms have "no special meaning" and New York law considers them ambiguous. Pacific presents strained meanings to words and phrases that it did not believe warranted any definition and asks this Court to write them into the policies now—something that New York law does not condone. At best for Pacific, the policy and the feigned interpretation it advances are ambiguous, mandating a resolution of those ambiguities in favor of coverage. This is particularly so when that interpretation limits coverage.

Additionally, despite already making one payment, Pacific now asserts that Jujamcyn "failed to cooperate" and comply with other conditions precedent to coverage. The affirmative defenses advanced by Pacific are both irreconcilable with fact and are textbook examples of what New York law considers "implausible."

---

[2] D.E. 32-1.

<u>**STATEMENT OF FACTS**</u>

## I.  <u>THE POLICY</u>

Pacific sold Jujamcyn "Performance Disruption" coverage under "Entertainment – Property Insurance for the Performing Arts Policy" number 7993-60-33 for the period May 1, 2019, to May 1, 2020 ("Policy").  Compl. ¶ 65.[3]  The Policy's pertinent coverages are discussed below but include two critical components.  First, the Policy identifies and specifically insures all five of Jujamcyn's Theaters. [4]  *Id.* ¶¶ 39, 66.  Second, the Policy includes dozens of definitions. The Policy informs Jujamcyn that Pacific elected to define some but not all of its terms and that only those "[w]ords and phrases that appear in **bold** print have special meanings and are defined." D.E. 1-1, 1-13 (emphasis in original).  As established below, none of the terms and phrases relied on by Pacific that limit coverage have "special meanings."

As for each of the Theaters, the Policy promises to pay for the actual:

- **business income** loss you incur due to the necessary cancellation, interruption or postponement of one or more of your performances, including the inability to open a new production as scheduled; and

- **extra expense** you incur due to the actual or potential cancellation, interruption, postponement or other impairment of one or more of your performances,

not to exceed the applicable Limit of Insurance for Performance Disruption shown in the Declarations.

This coverage applies only when the actual or potential cancellation, interruption, postponement or impairment of your performance is caused by or results from a **covered occurrence**.

---

[3] "Compl." refers to Jujamcyn's Complaint filed on August 24, 2020.  D.E. 1.

[4] The "Theaters" are the St. James Theatre; the Al Hirschfeld Theatre; the Walter Kerr Theatre; the Eugene O'Neill Theatre; and the August Wilson Theatre, all of which are in New York City's "theater district."  *Id.*

D.E. 1-13 at 20, **Coverage**. A "**covered occurrence** means any unexpected circumstances beyond your control, except as listed under Exclusions." *Id.* at 24, Definitions. In other words, a **covered occurrence** is a fortuitous loss that is not excluded.

The Policy provides a $250,000 "**LIMIT OF LIABILITY (EACH LOSS)**." D.E. 1-12 at 7, Declarations. The Declarations of the Policy state: "The most we will pay in any one occurrence is the amount of loss, not to exceed the applicable Limit of Insurance shown in the Declarations." *Id.*, **Limits of Insurance**. Although the Declarations identify a "**LIMIT OF LIABLITY (EACH LOSS)**" they do not provide a "Limit of Insurance." **LOSS** appears in bold font in the declarations but is not defined. Like **LOSS**, both "loss" and "occurrence" are not defined.

## II.     THE COVID-19 PANDEMIC AND SUBSEQUENT CIVIL AUTHORITY ORDERS

The first cases of COVID-19 in humans were reported in December 2019 in Wuhan, China. Compl. ¶ 21. Then, SARS-CoV-2 and COVID-19 spread throughout the world, prompting the World Health Organization to declare a global pandemic. *Id.*

In response to the pandemic and the worldwide spread of SARS-CoV-2, civil authorities throughout the United States began issuing "stay-at-home" and "shelter in place" orders, requiring the suspension of non-essential business operations and ordering businesses to close in March 2020. *Id.* ¶ 25. The potential danger of SARS-CoV-2 being present in theaters is greater than that posed by many other businesses. People from all over the country and world travel to New York to see a Broadway show. Countless individuals, asymptomatic, pre-symptomatic, or otherwise, were present at the Theaters before March 12, 2020. These individuals may have unknowingly spread the virus inside the Theaters and to countless others before returning to the cities, states and countries from which they came. Additionally, the operation of a Broadway

theater involves a large gathering of people within an enclosed space for a prolonged period, increasing the likelihood that SARS-CoV-2 would be in the airspace and on surfaces, and that such theater would be a potential source of exposure.  *Id*. ¶ 27.

Recognizing these facts, Governor Andrew Cuomo issued Executive Order 202.1 directing that "any theater seating five hundred or more attendees for a live performance located in [New York City] shall not hold any further performances after 5 pm on March 12, 2020." Compl. ¶ 3.  New York City Mayor de Blasio issued Emergency Executive Order No. 100 in which he directed that "all entertainment venues, including those with seating capacity below 500, are hereby closed effective Monday, March 16, 2020 at 8:00 PM.  Entertainment venues shall include . . . theatres[.]"  *Id.* ¶ 30.

## III.   PACIFIC'S FAILURE TO FULLY HONOR ITS CONTRACTUAL OBLIGATIONS

By letter dated June 10, 2020, Pacific "accepted Jujamcyn's performance disruption claim" but concluded that "coverage is limited to a single limit of $250,000 for all theaters." D.E. 27-4.  Pacific invoked no other Policy terms or conditions, nor any exclusions.  *Id*.  It reiterated that position by letter dated July 17, 2020 which, once again, cited no other Policy terms, conditions or exclusions.  *Id*.

## ARGUMENT

## I.   STANDARD OF REVIEW

### A.   Legal Standard Governing A Motion for Judgment On The Pleadings

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion[.]"  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir.

2001) (collecting cases).[5]  Thus, the court may rely on "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice." *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) (per curiam).  The Court may also consider documents not incorporated by reference if the complaint "relies heavily upon its terms and effect" and is therefore "integral" to the pleading.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (citation omitted).

The motion should be granted upon a showing that "no material issue of fact remains to be resolved" and that the movant is entitled to judgment as a matter of law.  *Juster Assocs. v. City of Rutland, Vt.*, 901 F.2d 266, 269 (2d Cir. 1990) (quoting 5 C. Wright & A. Miller, *Fed. Prac. & Proc.* § 1368, at 690 (1969)).  Disputes involving the interpretation of an insurer's contractual obligations under an insurance policy, whether any policy terms are ambiguous, and whether an exclusion applies to bar coverage are legal issues that can be resolved on the pleadings.  *Great Am. Ins. Co. v. Houlihan Lawrence, Inc.*, 449 F. Supp. 3d 354, 366 (S.D.N.Y. 2020) (granting insured's motion in part and denying insurer's motion).

### B.    New York Rules Governing Insurance Policy Construction and Interpretation

The language of insurance "contracts must be interpreted according to common speech and consistent with the reasonable expectation of the average insured." *Dean v. Tower Ins. Co. of N.Y.*, 19 N.Y.3d 704, 708, 955 N.Y.S.2d 817, at *2 (2012) (quoting *Cragg v. Allstate Indem. Corp.*, 17 N.Y.3d 118, 122, 926 N.Y.S.2d 867, 950 N.E.2d 500 (2011)).  Unambiguous provisions "must be given their plain and ordinary meaning, and the interpretation of such

---

[5] It also "governs the sufficiency of the pleading of affirmative defenses" (*E.E.O.C. v. Kelley Drye & Warren, LLP*, No. 10 Civ. 655(LTS)(MHD), 2011 WL 3163443, at *2 (S.D.N.Y.  July 25, 2011)) and a Rule 12(f) motion to strike.  *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 622-23 (S.D.N.Y.  2008).

provisions is a question of law for the court." *Dish Network Corp. v. Ace Am. Ins. Co.*, 431 F. Supp. 3d 415, 423 (S.D.N.Y. 2019) (citation omitted). A term is ambiguous if, "when … read as a whole, [it] fails to disclose its purpose and the parties' intent or where its terms are subject to more than one reasonable interpretation." *Id.* (citations omitted). The "test . . . focuses on the reasonable expectations of the average insured upon reading the policy and employing common speech." *Id.* (citation omitted). In other words, a word or phrase is ambiguous if it is "'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire … agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 617 (2d Cir. 2001) (citation omitted).

Whether a policy term is ambiguous "is a matter of law to be determined by the court." *Id.* at 616-17 (alteration, quotation marks and citation omitted). A term or phrase is unambiguous if "there is no reasonable basis for a difference of opinion." *Id.* at 617 (citations omitted). Any ambiguity in the policy language must be resolved against the insurer and in favor of coverage. *See, e.g., Great Am.*, 449 F. Supp. 3d at 366; *Cragg*, 17 N.Y.3d at 122; *Westview Assocs. v. Guar. Nat'l Ins. Co.*, 95 N.Y.2d 334, 339, 717 N.Y.S.2d 75, 740 N.E.2d 220 (2000). Indeed, any arguably reasonable reading of the policy in favor of the policyholder controls. *See, e.g., Nat'l Football League v. Vigilant Ins. Co.*, 36 A.D.3d 207, 212-13, 824 N.Y.S.2d 72, 76 (N.Y. App. Div. 2006) (insured's "plausible interpretation" of exclusion supporting coverage "must be sustained"); *Woods v. Gen. Accident Ins.,* 292 A.D.2d 802, 803, 738 N.Y.S.2d 791, 792 (N.Y. App. Div. 2002) ("'If an ambiguity exists, the ***insurer*** bears the burden of establishing that the construction it advances is not only reasonable, but also that it is the *only* fair construction.'" (citation omitted, emphasis added)).

## II.    JUJAMCYN SUFFERED MULTIPLE LOSSES UNDER THE POLICY

As noted above, the Policy promises to pay for Jujamcyn's business income loss and extra expense if it "is caused by or results from a **covered occurrence**." D.E. 1-13, **Coverage**. The Policy provides a $250,000 "**LIMIT OF LIABILITY**" for "**(EACH LOSS)**." *Id.*, Declarations. By using the word **EACH**, Pacific unarguably contemplated Jujamcyn incurring more than one **LOSS** arising out of any occurrence. The word **LOSS** appears in bold font in the declarations but is not defined. Pacific wrongfully concluded that the Theaters sustained one collective **LOSS** or "loss" and that its singular **LOSS** or "loss" was caused by a single "occurrence." Jujamcyn is entitled to coverage for at least five losses because: (1) "loss" is an undefined term that creates ambiguity that should be construed in Jujamcyn's favor; and (2) Pacific's interpretation of the undefined term "occurrence" conflicts with the Policy's terms and renders other Policy terms superfluous.

### A.    "Loss" Is Undefined and Ambiguous

The rule requiring that ambiguities be resolved in favor of an insured "is enforced even more strictly when the language at issue purports to limit the company's liability[.]" *Venigalla v. Penn Mut. Ins. Co.*, 130 A.D.2d 974, 975, 515 N.Y.S.2d 939 (N.Y. App. Div. 1987). Moreover, courts "must construe the policy in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." *In re Viking Pump, Inc.*, 27 N.Y.3d 244, 257, 33 N.Y.S.3d 118, 125, 52 N.E.3d 1144, 1151 (2016) (citation omitted). "[S]urplusage [is] a result to be avoided." *Id.* (citation omitted). *See also Martin, Shudt, Wallace, Dilorenzo & Johnson v. Travelers Indem. Co. of Conn.*, No. 1:13-CV-0498 (LEK/CFH), 2014 WL 460045, at *4 (N.D.N.Y. Feb. 5, 2014) ("a policy's terms should not be assumed . . . to have been idly inserted") (citation omitted).

A policy that uses but does not define the word "loss" "creat[es] ambiguities" that must be resolved in favor of coverage. *OTC Int'l., Ltd. v. All Those Underwriters At Lloyd's of London*, 1 Misc. 3d 911(A), at *3, 781 N.Y.S.2d 626 (Sup. Ct. Queens Cnty. Jan. 29, 2004) (considering whether a series of thefts constituted one or multiple losses). In *Horowitz v. Am. Int'l Grp., Inc.*, No. 09 Civ. 7312(PAC)*, 2010 WL 3825737, at * 5 (S.D.N.Y. Sept. 30, 2010), the court agreed and cited *OTC Int'l* for the notion that this "ambiguity is foreseeable." *See also Glassalum Int'l Corp. v. Albany Ins. Co.*, No. 03 Civ. 9166(DC), 2005 WL 1214333, at * 7 (S.D.N.Y. May 23, 2005) (citing *OTC* and *Foy v. D.B. Frame Shop, Ltd.*, 210 A.D.2d 162, 620 N.Y.S.2d 356 (N.Y. App. Div. 1994) (a key term undefined is ambiguous); *Matter of Mostow v. State Farm Ins. Cos.*, 88 N.Y.2d 321, 323, 645 N.Y.S.2d 421, 668 N.E.2d 392 (1996) (finding a policy ambiguous because of two reasonable constructions of the policy's "per person" and "each accident" limits).

Consistent with this authority, both **EACH LOSS** and "loss" are ambiguous because neither is defined and they cannot be synonymous. The fact that the Policy provides a limit of liability **EACH LOSS** and separately insures each of the Theaters establishes an intent by Pacific and a reasonable expectation by Jujamcyn that there can be more than one loss and, here, at least five losses. That neither **EACH LOSS** nor "loss" is defined creates an inherent ambiguity that the Policy fails to resolve. Pacific cannot establish that the sole reasonable interpretation of the Policy mandates a finding that Jujamcyn sustained one **LOSS** or "loss." These ambiguities must be resolved in favor of coverage, mandating a determination that Jujamcyn sustained more than one **LOSS** or "loss" as a matter of law.

## B. Pacific's Interpretation Is Inconsistent with the Policy's Terms and Renders Other Policy Terms Superfluous

Pacific's secondary argument is that the number of **LOSSES** or "losses" sustained is irrelevant because Jujamcyn's claim only arises from a single "occurrence." Compl. ¶ 72. This argument fails for similar reasons. First, Pacific interchangeably uses the words "loss" and "occurrence" as if they were synonymous. As noted above, they cannot be. Second, Pacific acknowledges that Jujamcyn's claim arises from at least one **covered occurrence** and now uses that defined phrase and the undefined word "occurrence" interchangeably. But like with **EACH LOSS** and "loss," **covered occurrence** and "occurrence" must both mean something but they cannot mean the same thing. Moreover, the undefined use of the word "occurrence" is ambiguous regardless of the Policy's failure to distinguish it from **covered occurrence**.

In *World Trade Center Properties, L.L.C. v. Hartford Fire Insurance Co.*, 345 F.3d 154, 190 (2d Cir. 2003), *abrogated on other grounds*, *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006), the court affirmed the district court's holding that "the meaning of 'occurrence'" is ambiguous. The court held that "in a first-party property insurance case, the meaning of the undefined term 'occurrence' is an open question as to which reasonable finders of fact could reach different conclusions." *Id.* at 190 (citing *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 136, n.9 (2d Cir. 1986) ("the meaning of 'occurrence' must be interpreted in the context of the specific policy and facts of this case.")).[6]

Pacific may rely on *Newmont* and *Appalachian Ins. Co. v. Gen. Elec. Co.*, 8 N.Y.3d 162, 831 N.Y.S.2d 742 (2007) to argue that there was only one occurrence under the Policy. Neither case supports that argument. The *Newmont* court considered a policy that did not define

---

[6] In *Dataflow, Inc. v. Peerless Ins. Co.*, No. 3:11-cv-1127 (LEK/DEP), 2015 WL 6023675, at *6 (N.D.N.Y. Oct. 15, 2015), this Court subsequently held that neither *World Trade Center* nor *Newmont* precluded the court from "determin[ing] the number of occurrences as a matter of law."

"occurrence" or "loss" in the context of two portions of one roof collapsing as a result of one snowstorm. The court held that "the meaning of 'occurrence' must be interpreted in the context of the specific policy and facts of this case" and found that two separate portions of the same roof that collapsed from the same snowstorm constitutes two separate occurrences. *Id*. at 136 n.9. If damage to two portions of the same roof caused by one storm constitutes two occurrences, then damage to two distinct theaters caused by one pandemic constitutes two occurrences (even if the pandemic is only one "occurrence").

*Appalachian* is similarly unsupportive as that case involved a third-party liability policy where the policy at issue defined "occurrence" as "an accident, event, happening or continuous or repeated exposure to conditions which unintentionally results in injury or damage during the policy period." 8 N.Y.3d at 168. In fact, another court in this District—in a case involving Pacific's counsel here—held that *Appalachian* "stands for nothing more than the proposition that 'numerous [asbestos] exposure incidents,' alleged by various claimants against a single defendant, can constitute multiple occurrences rather than one occurrence." *Danaher Corp. v. Travelers Indem. Co.*, 10-CV-121 (JPO), 2020 WL 6712193, at *2 (S.D.N.Y. Nov. 16, 2020).

Finally, the Policy evidences no intent to aggregate losses into a single "occurrence." Pacific could have defined "occurrence" in the manner it does now or could have provided coverage on a "per occurrence" basis rather than providing a limit of liability **EACH LOSS**. No definition of "occurrence" or purported intent to provide coverage on a "per occurrence" basis can be written into the Policy now. *See, e.g.*, *Roman Cath. Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 21 N.Y.3d 139, 149, 969 N.Y.S.2d 808, 814, 991 N.E.2d 666, 672 (2013) (the policy must "evince[] an intent to aggregate" all losses into a single occurrence).

On each of these grounds, individually and in the aggregate, the Policy does not unambiguously

support Pacific's one **LOSS**/loss/occurrence theory.

### C. Pacific's Interpretation of The Term "Occurrence" Conflicts with Jujamcyn's Reasonable Expectations

Before finding that there were multiple covered occurrences, the *Newmont* court

underscored the parties' intent when construing contracts. It stated:

> The cardinal principle for the construction and interpretation of insurance contracts—as with all contracts—is that the intentions of the parties should control. Unless otherwise indicated, words should be given the meanings ordinarily ascribed to them and absurd results should be avoided. As we have stated before, the meaning of particular language found in insurance policies should be examined in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes.

784 F.2d at 135 (citations and quotation marks omitted).

Applying those principles here, the only reasonable conclusion is that Pacific's

interpretation of the term "occurrence" contradicts the parties' intent. Pacific knowingly sold a

performance disruption policy to multiple, separate Theaters. Its assertion that losses at multiple

theaters, each at individual locations and suffering distinct losses, should all be aggregated into

one "occurrence" because all such damages relate to the "COVID-19 pandemic" conflicts with

the intent of the parties and the insureds' reasonable expectations.

When interpreting insurance contracts, New York courts analyze an insured's reasonable

expectations. *See, e.g.*, *Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398

(1983) ("The tests to be applied in construing an insurance policy are common speech and the

reasonable expectation and purpose of the ordinary businessman") (internal citations omitted).

By its plain terms, the Policy provides coverage relating to "one or more of your

performances." Thus, the intent of the parties was to cover up to $250,000 in "loss" relating to

"one or more performances" at an insured location. Nothing in the Policy clearly mandates, let alone conspicuously and plainly, that cancellation of one or more performances at another insured location is not separately covered, or that Jujamcyn is not entitled to a separate $250,000 limit of liability for cancelled performances per Theater. That is true even if the losses were considered to arise solely from the pandemic because "loss" is based on the performance(s) at an individual Theater.

Moreover, the Policy covers losses at a theater stemming from "the necessary cancellation, interruption or postponement" of performances and "the inability to open a new production as scheduled." Thus, Pacific specifically contemplated and intended to provide coverage for the unique losses and damages sustained by each individual theater, including the specific possibility that one theater's loss may, for example, stem from cancelled performances of a production that already opened, while another theater's loss may stem from the inability to open a new one.

There is no good-faith, Policy-supported argument that losses sustained by multiple Theaters should be aggregated into one $250,000 loss/**LOSS**. Had Pacific intended that to be the result, it should have said so, conspicuously, plainly, and clearly in the Policy, not after the losses were incurred. Jujamcyn reasonably expected disruption coverage for each of the shows at each of the Theaters because its losses occurred unexpectedly and were not caused by Jujamcyn.

Finally, under no circumstances is "the COVID-19 pandemic" the one and only "occurrence." Any or all of these events, merely by examples, arguably constitute separate "occurrences" that trigger a fresh limit of liability per location:

- On March 7, 2020, New York Executive Order 202 was issued "Declaring a Disaster Emergency in the State of New York." It was extended.

- On March 12, 2020, New York Executive Order 202.1 was issued stating that "any theater seating five hundred or more attendees for a live performance located in a city of one million or more shall not hold any further performances after 5pm on March 12, 2020." [7]

- On March 16, 2020, the Mayor of New York City issued an emergency order requiring "all entertainment venues, including those with seating capacity below 500" to close by 8:00 PM that evening. That same day, the White House instructed all Americans to avoid groups of more than 10 people and urged the elderly population to remain at home.

Simultaneously, other states issued their own orders at different times, for different reasons and imposing different limitations. Those state orders, for example, limited or restricted travel to New York which alone would have impacted Jujamcyn's ability to conduct performances as scheduled. Jujamcyn's performance cancellations at each individual Theater can be attributed to any one of these events (as well as others). Thus, Jujamcyn is entitled to judgment that it sustained, at a minimum, five **LOSSES**—one for **EACH** of the Theaters. [8]

## III. THE NINTH, ELEVENTH, TWELFTH, THIRTEENTH, FIFTEENTH AND SIXTEENTH AFFIRMATIVE DEFENSES ARE PER SE IMPROPER, IMPLAUSIBLE, AND WAIVED AS A MATTER OF LAW

### A. Affirmative Defenses That Are Waived

There is a "general rule that an insurer waives whatever defenses it does not include in its claim denial." *Rockland Exposition, Inc. v. Great Am. Assurance Co.*, 746 F. Supp. 2d 528, 544-

---

[7] Each of the Theaters arguably sustained a new **LOSS** with each extension of Executive Order 202.1. Although the number of **LOSSES** sustained may ultimately be for a jury to decide, this Court can declare that Jujamcyn sustained more than one and at least five.

[8] Pacific may argue that *Chicago's Preschool Acad. of Learning, Inc. v. West Bend Mut. Ins. Co.*, No. 20-CV-04044, 2020 WL 5702145 (N.D. Ill. Sept. 24, 2020) holds that the "COVID-19 pandemic" is a single occurrence. That court made no such determination. The issue there was whether the insured could meet the $75,000 jurisdictional requirement where it "made only a single claim" for the closure of its one preschool under a policy's communicable disease coverage provision providing $50,000 "in any one occurrence." *Id.* at *1. The insured filed suit in state court and the insurer removed to federal court, arguing that the amount in controversy in an insurance case is not the amount of damages a plaintiffs seeks, but the total value of the policy at issue. The court disagreed and remanded the case because the insured explicitly stated that its recovery is limited to "no more than $50,000." *Id.* at *2. The court did not make a blanket finding that a global pandemic constitutes a single "loss" or "occurrence" under that policy and made no pronouncement applicable to any other policy or any other claim submitted to any other insurer by any other insured.

45 (S.D.N.Y. 2010).  In *State of New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1432 (2d Cir. 1991), the court "unequivocally recognized" the "settled" rule "that '[w]hen one specific ground of forfeiture is urged against the claim, and a refusal to pay is based upon a specific ground, all other grounds are waived'" (citing *Luria Bros. & Co. v. Alliance Assurance Co.*, 780 F.2d 1082, 1090 (2d Cir. 1986) (quoting 16C Appleman & Appleman, *Insurance Law and Practice* § 9260, at 393 (1981)).  Waiver exists "as a matter of law" "where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense" and fails to assert it.  *AMRO*, 936 F.2d at 1431.[9]  The *Cirucci* court explained the rationale behind what the *AMRO* court called "this *per se*" rule:

> Although an insurer may disclaim coverage for a valid reason . . . the notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated. Absent such specific notice, a claimant might have difficulty assessing whether the insurer will be able to disclaim successfully. This uncertainty could prejudice the claimant's ability to ultimately obtain recovery. In addition, the insurer's responsibility to furnish notice of the specific ground on which the disclaimer is based is not unduly burdensome, the insurer being highly experienced and sophisticated in such matters.

46 N.Y.2d at 864.  *See also Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980) (asserting certain coverage defenses may establish intent to abandon others).

Pacific purportedly conducted and concluded its investigation and then accepted coverage and paid what it contends is its limit of liability.  Pacific never previously insinuated that Jujamcyn failed to honor any contractual obligation, cooperate or mitigate its losses (and Pacific would not have made any payment if it believed these defenses were potentially applicable).

---

[9] *See also Gen. Accident Ins. Grp. v. Cirucci*, 46 N.Y.2d 862, 864, 414 N.Y.S.2d 512, 387 N.E.2d 223 (1979) (if a ground for denial "was not raised in the letter of disclaimer, it may not be asserted now."); *Benjamin Shapiro Realty Co. v. Agric. Ins. Co.*, 287 A.D.2d 389, 389, 731 N.Y.S.2d 453 (N.Y. App. Div. 2001) ("A notice of disclaimer must provide a claimant with a very specific ground upon which the disclaimer is predicated. A ground not raised in the letter of disclaimer may not later be asserted as an affirmative defense.") (internal citation omitted).

Pacific now asserts for the first time as affirmative defenses that Jujamcyn's claims were denied under the Policy on those very grounds: (1) "Failure to Perform Obligations, Covenants, and Conditions Precedent and/or Subsequent"; (2) "Insured's Duties in the Event of Loss or Damage/Assistance and Cooperation"; (3) "Failure to Mitigate Damages" and (4) "Policy Terms, Exclusions, Conditions and Limitations." D.E. 20, Ninth, Twelfth, Thirteenth & Sixteenth Aff. Defs. Pacific waived these affirmative defenses because, if they were potentially plausible in the first instance (which they are not), Pacific had to assert them long before joining issue.[10]

### B. Affirmative Defenses That Are "Implausible"

Besides being waived under the per se rule articulated above, the inclusion of these affirmative defenses with no factual support fails to satisfy the "plausibility standard" recently reaffirmed by this Court in *Jablonski v. Special Counsel, Inc.*, 1:16-cv-05243 (ALC), 2020 WL 1444933, at *2 (S.D.N.Y. Mar. 25, 2020). The pleading of these affirmative defenses by Pacific is implausible. It also illuminates Pacific's bad faith motives and potentially frivolous conduct. Pacific paid what it contends is the full limit of the Policy so the only dispute between Pacific and Jujamcyn is the number of "**LOSSES**" Jujamcyn sustained—not whether they are covered.[11] Pacific's assertion of these affirmative defenses is unarguably implausible because Pacific paid what it claims to be its limit of liability.

---

[10] Pacific also invokes a "loss of market" exclusion for the first time as an affirmative defense so it is also waived. *Id.* Eleventh Aff. Def. Additionally, Pacific's reliance on this exclusion is implausible and inapplicable, even if not waived. *See, e.g.*, *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 279 F. Supp. 2d 235, 240 (S.D.N.Y. 2003) ("The loss of market exclusion relates to losses resulting from economic changes occasioned by, *e.g.*, competition, shifts in demand, or the like; it does not bar recovery for loss of ordinary business caused by a physical destruction or other covered peril.").

[11] For these same reasons, Pacific's invocation of a "lack of audience" exclusion is per se improper. D.E. 20, Fifteenth Aff. Def. Pacific never previously invoked this exclusion because it tendered what it contends is the Policy's limit of liability based on its interpretation of "**EACH LOSS**."

## **CONCLUSION**

Jujamcyn suffered at least five **LOSSES** under the Policy and Pacific's affirmative

defenses are either inapplicable, implausible or waived. Thus, judgment should be entered in

Jujamcyn's favor.

Dated: New York, New York
          April 29, 2022                               **PASICH LLP**

                                        By:    /s/ Jeffrey L. Schulman
                                               Jeffrey L. Schulman (3903697)
                                               Stephen Wah (5607437)
                                               286 Madison Avenue, Suite 401
                                               New York, New York 10017
                                               Telephone: (212) 686-5000
                                               JSchulman@PasichLLP.com
                                               SWah@PasichLLP.com

                                                      -and-

                                               Kirk Pasich (*pro hac vice*)
                                               10880 Wilshire Boulevard, Suite 2000
                                               Los Angeles, California 90024
                                               Telephone: (424) 313-7850
                                               KPasich@PasichLLP.com

                                               *Attorneys for Jujamcyn Theaters LLC*