UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUJAMCYN THEATERS LLC, <br><br> Plaintiff, <br><br> -against- <br><br> FEDERAL INSURANCE COMPANY and PACIFIC INDEMNITY COMPANY, <br><br> Defendants. | 20-CV-6781 (ALC)(JW) <br><br> <u>OPINION AND ORDER</u> |

**ANDREW L. CARTER, JR., United States District Judge:**

Jujamcyn Theaters LLC ("Jujamcyn" or "Plaintiff") brings this action against Federal Insurance Company ("Federal") and Pacific Indemnity Company ("Pacific") (collectively "Defendants") alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment related to insurance coverage allegedly due under two policies issued by Federal and Pacific. (*See generally* Compl. ECF No. 8.) Both Plaintiff and Defendants move for judgment on the pleadings. For the reasons stated below, Plaintiff's motion is **DENIED** and Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

BACKGROUND

## I. Factual Background

The following is taken from the Complaint, the parties' motion papers, and the documents relied upon therein, as well as matters of which the court can take judicial notice. *See Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009).

Jujamcyn is one of the largest Broadway theater owners in New York and owns and operates five prominent theaters: the St. James Theatre; the Al Hirschfeld Theatre; the Walter Kerr Theatre; the Eugene O'Neill Theatre; and the August Wilson Theatre. (Compl., ECF No. 8 ¶¶ 1,

1

39.)  Defendants Federal and Pacific are members of the Chubb insurance group and issued separate insurance policies to Jujamcyn.  (*Id.* ¶ 7.)

### A. The COVID-19 Pandemic and its Effect on Jujamcyn's Business

After the emergence of the COVID-19 virus in New York, former Governor Andrew Cuomo issued Executive Order 202 on March 7, 2020, declaring a state of emergency.  (*Id.* ¶ 26.) On March 12, 2020 Governor Cuomo issued Executive Order 202.1, ordering that "any theater seating five hundred or more attendees for a live performance located in [the City of New York] shall not hold any further performances after 5 pm on March 12, 2020."  (*Id.* ¶ 28.)  In addition, on March 16, 2020, former New York City Mayor Bill De Blasio issued Emergency Executive Order No. 100, ordering that "all entertainment venues, including those with seating capacity below 500, are hereby closed effective Monday, March 16, 2020 at 8:00 PM."  (*Id.* ¶ 30.)  As part of this announcement De Blasio stated that "the virus physically is causing property loss and damage."  (*Id.*)  Finally, on March 22, 2020, all businesses in New York were subject to the "New York State on PAUSE" order which directed all non-essential businesses to close, including theaters.  (*Id.* ¶ 31.) [1]  As a result of these emergency ordinances, all five of Jujamcyn's theaters were forced to close and Plaintiff suffered substantial financial losses.  (*Id.* ¶ 4.)

Plaintiff alleges that two individuals working at Broadway theaters located within 10 miles of Jujamcyn's theaters tested positive for COVID-19.  (*Id.* ¶ 28.)  The Complaint also describes how COVID-19 is spread and explains that "[t]he disease can spread from person to person through small droplets from the nose or mouth which are spread when a person with COVID-19 coughs or exhales.  These droplets land on objects and surfaces around the person."  (*Id.* ¶ 22.)  The

---

[1] Broadway theaters were permitted to reopen on September 14, 2021. (https://www.governor.ny.gov/news/governor-cuomo-announces-broadway-fully-reopen-its-doors-september.)

2

Complaint also alleges that "the operation of a Broadway theater involves a large gathering of people within an enclosed space for a prolonged period, increasing the likelihood that [COVID-19] would be in the airspace and on surfaces, and that such theater would be a potential source of exposure." (*Id.* ¶ 27.)

### B. The Federal Policy

Federal sold Jujamcyn "Customarq Series Entertainment Insurance Program" for the period May 1, 2019 to May 1, 2020 (the "Federal Policy"). (*Id.* ¶ 37.) The Federal Policy is an "all-risk" property insurance policy that insures each of Jujamcyn's five theaters against property damage. (*Id.* ¶ 39.) The two provisions at issue here—the "**Business Income and Extra Expense**" and "**Civil Authority**" provisions—provide coverage for losses that "result from direct physical loss or damage" and that are "the direct result of direct physical loss or damage to property". (Compl., Ex. A, ECF No. 1-3 at 12, 14–15 (emphasis in the original).) The policy does not have an explicit carveout for losses that are the result of virus, communicable diseases or pandemics, as do other policies that have been challenged in the wake of the COVID-19 pandemic. (Compl., ECF No. 8 ¶ 44.)

Plaintiff alleges that "[b]ecause the [COVID-19] virus can adhere to surfaces of property for several days and can linger in the air in buildings for several hours, the presence of the [COVID-19] virus on or around property amounts to 'direct physical loss or damage' as that phrase is used in the Federal Policy." (*Id.* ¶ 52.) Plaintiff maintains that it reasonably expected the Federal Policy to cover its losses resulting from the COVID-19 closures but that Federal has refused to pay Jujamcyn for any losses pursuant to the policy. (*Id.* ¶¶ 46, 48, 55–57.)

C.  The Pacific Policy

Pacific sold Jujamcyn "Performance Disruption" coverage for the period May 1, 2019 to May 1, 2020 (the "Pacific Policy").  (Compl., ECF No. 8 ¶ 65.)  The Pacific Policy insures "**business income** loss" "due to the necessary cancellation, interruption or postponement of one or more of [] performances, including the inability to open a new production as scheduled" and any "**extra expense**" "due to the actual or potential cancellation, interruption, postponement or other impairment of one or more of your performances," provided that it is "caused by or results from a covered occurrence."  (*Id.* ¶ 67; Compl., Ex. C, ECF No. 1-13 at 20 (emphasis in the original.))  A "**covered occurrence**" is defined as "any unexpected circumstances beyond your control, except as listed under Exclusions."  (*Id.* at 24 (emphasis in the original).)

Any amount payable due under the Pacific Policy is capped by "the applicable Limit of Insurance for Performance Disruption".  (Compl., Ex. C, ECF No. 1-12 at 7.)  "Limits of Insurance" is defined as "[t]he most we will pay in any one occurrence is the amount of loss, not to exceed the applicable Limit of Insurance shown in the Declarations."  (Compl., Ex. C, ECF No. 1-13 at 22.)  In the declaration accompanying the policy, the "Limit of Liability (Each Loss)" is capped at $250,000.  (Compl., Ex. C, ECF No. 1-12 at 7.).

Jujamcyn Theaters, LLC is the only listed insured on the Pacific Policy, but the policy does also list thirteen additional payees, which includes the LLCs for each of Jujamcyn's five theaters.  (Compl., Ex. C, ECF No. 1-13 at 27.)  Additionally, Jujamcyn alleges that Pacific specifically agreed to insure all five theaters, noting that "[i]n advance of issuing the Pacific Policy to Jujamcyn, Pacific engaged in, or had reasonable opportunities to engage in, extensive underwriting investigation, and became familiar with and knowledgeable regarding the nature and scope of

4

Jujamcyn's business and the nature of the risks that Pacific was insuring against." (Compl., ECF No. 8 ¶ 66.)

Pacific tendered a single payment of $250,000 to Jujamcyn based on its interpretation of "limit of liability" due under the policy. (*Id.* ¶ 72.) Jujamcyn, on the other hand, maintains that the closure of its five theaters *each* represent a "loss" for which for which Jujamcyn is owed five payments of $250,000. (*Id.* ¶¶ 71–77.)

## II.     Procedural History

Plaintiff initiated this suit on August 24, 2020. (ECF No. 1.) The parties first filed cross-motions for judgment on the pleadings on November 17, 2020. (ECF Nos. 27, 28.) Subsequently, after the motions were fully briefed, the Court denied both motions without prejudice following the Second Circuit's decision in *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216 (2d Cir. 2021) ("*10012 Holdings*") and directed the parties to file a status report addressing the effect of the decision on the legal issues in this case. (ECF No. 35.) The parties filed a letter indicating that they intended to refile their cross motions for judgment on the pleadings. (ECF No. 38.) The Court granted leave for the parties to file their motions and set a briefing schedule. (ECF No. 40.)

Jujamcyn filed its motion for judgment on the pleadings on May 12, 2022. (ECF No. 43.) Jujamcyn argues that it is entitled to a judgment as a matter of law for its claims relating to the Pacific Policy and asks the Court to strike Pacific's affirmative defenses. (*Id.*) Pacific filed a response on May 25, 2022. (ECF No. 50.) Jujamcyn filed a reply on June 15, 2022. (ECF No. 54.)

Defendants also filed a cross motion for judgment on the pleadings on May 12, 2022, asking the Court to dismiss the entirety of Plaintiff's Complaint and entering judgment in

Defendants' favor. (ECF No. 45.) Jujamcyn filed a response on May 25, 2022. (ECF No. 52.) Defendants filed a reply on July 15, 2022. (ECF No. 53.)

## STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir.2010). Thus, the Court accepts the nonmovant's allegations as true and draws all reasonable inferences in the nonmovant's favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir.2009). In essence, a grant of a motion pursuant to Rule 12(c) is proper if "from the pleadings, the moving party is entitled judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam). "On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

## DISCUSSION

The parties have filed cross-motions for judgment as a matter of law regarding the two policies at issue in this case. The Court will address the claims against each Defendant in turn.

### I.   Federal Insurance

Defendants move for judgment on the pleadings as to Plaintiff's claims against Federal for breach of contract, declaratory judgment, and breach of the implied covenant of good faith and fair dealing. For the reasons set forth below, this motion is granted.

#### A.   Breach of Contract and Declaratory Judgment

Federal argues that Plaintiff cannot sustain its claim for damages allegedly owed pursuant to the Federal Policy in light of the Second Circuit's decision in *10012 Holdings* and its progeny.

(ECF No. 46 at 9–14.) Specifically, Federal contends that Plaintiff does not and cannot allege that its losses resulted from "direct physical loss or damage" to its theaters such that coverage under the Federal Policy would be triggered. (*Id.* at 9.) Plaintiff argues that its claim survives this precedent because the Complaint alleges that COVID-19 did cause physical damage to Jujamcyn's theaters through the presence of aerosolized droplets that spread the virus in its theaters. (ECF No. 52 at 7–8.)

The Court finds that *10012 Holdings* and subsequent decisions in this district are dispositive of Plaintiff's claims against Federal. In *10012 Holdings*, the Second Circuit considered the appeal of an art gallery and dealership which claimed it was wrongly denied coverage for "Business Income" and "Extra Expense" arising from the closure the COVID-19 business closures. *10012 Holdings*, 21 F.4th at 219. As is the case here, the policies at issue insured losses arising from "direct physical loss or physical damage" to the property. *Id.* The Second Circuit held, in accordance with the First Department's decision in *Roundabout Theatre Co. v. Continental Casualty Co.*, 751 N.Y.S.2d 4 (1st Dep't 2002), that "under New York law the terms 'direct physical loss' and 'physical damage' in the Business Income and Extra Expense provisions do not extend to mere loss of use of a premises, where there has been no physical damage to such premises; those terms instead require actual physical loss of or damage to the insured's property." *Id.* at 222. This holding was affirmed through a serious of summary orders. *See Rye Ridge Corp. v. Cincinnati Insurance Co.*, 2022 WL 120782 (2d Cir. Jan. 13, 2022); *Deer Mountain Inn LLC v. Union Insurance Co.*, 2022 WL 598976 (2d Cir. Mar. 1, 2022); *SA Hospitality Group, LLC v. Hartford Fire Insurance Co.*, 2022 WL 815683 (2d Civ. Mar. 18, 2022).

The Second Circuit also addressed the issue that is currently before the Court—whether the presence of the droplets that spread COVID-19 triggers property damage coverage. In *Kim-*

*Chee LLC v. Philadelphia Indemnity Insurance Co.*, 2022 WL 258569 (2d Cir. Jan. 28, 2022), the Second Circuit rejected this argument, concluding that the allegations that COVID-19 caused property damage as defined under the policy at issue were "generic" and "insufficient to state a claim". *Id.* at *2. The Circuit further noted that even if the droplets were present at the subject property, "the complaint does not allege that any part of its building or anything within it was damaged—let alone to the point of repair, replacement, or total loss." *Id.* at *2. Several other courts in this district have followed this reasoning and also held that the presence of COVID-19 fomites does not constitute property damage. *See, e.g., John Gore Org., Inc. v. Fed. Ins. Co.*, No. 21-CV-2200 (PGG)(KHP), 2022 WL 873422, at *12 (S.D.N.Y. Mar. 23, 2022); *Stetson Real Est. LLC v. Sentinel Ins. Co., Ltd.*, No. 20-CV-8902 (KMK), 2022 WL 2441576, at *5 (S.D.N.Y. July 5, 2022); *Plaza Athenee Hotel Co. Ltd. v. Cont'l Cas. Co.*, No. 21-CV-3245 (MKV), 2022 WL 902647, at *4 (S.D.N.Y. Mar. 27, 2022); *Mario Badescu Skin Care Inc. v. Sentinel Ins. Co.*, 2022 WL 253678, at *5 (S.D.N.Y. Jan. 27, 2022).

Likewise, here, Plaintiff has not alleged that COVID-19 droplets caused any damage to its theaters such that they required repair or replacement or that any droplets caused any loss whatsoever. Plaintiff merely argues, in conclusory fashion, that "[b]ecause the [COVID-19] virus can adhere to surfaces of property for several days and can linger in the air in buildings for several hours, the presence of the [COVID-19] virus on or around property amounts to 'direct physical loss or damage' as that phrase is used in the Federal Policy." (Compl., ECF No. 8 ¶ 52.) The Complaint does not allege what losses may have been incurred as a result of this so called "physical damage".[2] Rather, the Complaint alleges that Plaintiff's damage was caused by the executive

---

[2] Courts have rejected the argument that costs ensued from disinfecting a property with suspected COVID-19 exposure does not constitute property damage under an insurance policy. *See Plaza Athenee Hotel Co. Ltd.*, 2022 WL 902647, at *3.

8

orders which mandated the closure of its theaters—not from aerosolized fomites which may have been present at Jujamcyn's theaters.  As such, Plaintiff has not alleged that it suffered "physical damage" within the meaning of the Federal Policy's "Business Income and Extra Expense" or "Civil Authority" provisions, and thus cannot sustain its breach of contract or declaratory judgment causes of action against Federal.  *See Stetson Real Est. LLC*, 2022 WL 2441576, at *5.  For this reason, Defendants' motion for judgment on the pleadings on Plaintiff's breach of contract and declaratory judgment claim as to Federal is granted.

### B.  <u>Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Defendants also ask the Court to dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing because Plaintiff has not demonstrated that Federal breached its duty of good faith and that the claim is duplicative of the breach of contract claim. (ECF No. 46 at 17–19.)  In response, Plaintiff argues that its breach of contract and breach of the implied covenant of good faith and fair dealing claim is not duplicative and the two causes of action can be maintained in tandem.  (ECF No. 52 at 21–22.)

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (citing *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992)).  "However, 'New York law…does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.'" *County of Orange v. Travelers*

*Indem. Co.*, No. 13-CV-06790 NSR, 2014 WL 1998240, at *2 (S.D.N.Y. May 14, 2014) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)).

Plaintiff alleges that:

> "Federal breached its implied covenant of good faith and fair dealing in multiple ways, including: (i) undertaking absolutely no investigation whatsoever of Jujamcyn's claim and, instead, arbitrarily and with reckless disregard of Jujamcyn's rights, refusing to acknowledge coverage or even conduct an investigation before denying Jujamcyn's claim for coverage; (ii) denying Jujamcyn's claim with either actual knowledge and/or reckless disregard of the fact that its acts and/or omissions constituted an unreasonable failure to honor its contractual obligations; (iii) knowingly and recklessly basing its denial of coverage on frivolous grounds which are unsupported by fact, law or the Federal Policy itself and in doing so, showing no regard whatsoever for its insured; and (iv) compelling Jujamcyn to file this suit in order to receive the contractual benefits which it bought and paid for."

(Compl., ECF No. 8 ¶ 111.) These allegations appear to derive from Federal's interpretation of the scope of coverage under the policy, and the Court can discern no daylight between Plaintiff's causes of action for breach of contract and its claim for breach of the implied covenant of good faith and fair dealing. Thus, because the Court has determined that the presence of COVID-19 does not constitute "direct physical loss" to Jujamcyn's theaters under the Federal Policy, Plaintiff cannot sustain a claim of breach of the implied covenant of good faith and fair dealing against Jujamcyn for failing to tender payment pursuant to that policy. Accordingly, Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing is also dismissed.

## II. Pacific Insurance

Both Plaintiff and Pacific move for judgment on the pleadings on the scope of coverage due under the Pacific Policy. Pacific also asks the Court to dismiss Plaintiff's related claims for declaratory judgment and good faith and fair dealing as duplicative. Plaintiff also asks the Court

to strike several of Pacific's affirmative defenses stated in its Answer. For the reasons stated below, Plaintiff's motion is denied and Defendant's motion is denied in part and granted in part.

    A. <u>Breach of Contract</u>

The parties agree that the COVID-19 pandemic and related closure of all theater performances is a "covered occurrence" under the Pacific Policy. However, they disagree on the definition of "loss" under the policy and the amount of money Jujamcyn is owed for that loss. Jujamcyn argues that because the language in the policy that sets the $250,000 limit of liability refers to "each loss", Jujamcyn is owed a $250,000 payment for each the closures of its five theaters. Jujamcyn contends that Pacific knew, through its due diligence, that Jujamcyn operated five theaters and was thus necessarily offering insurance to Jujamcyn for each of the theaters. (ECF No. 44 at 8–14.)

Pacific also moves for judgment on the pleadings on this issue, essentially arguing that the definition of "loss" is coterminous with "occurrence" and thus contends that because Covid-19 constitutes a single "occurrence" under the policy, Jujamcyn only suffered one "loss". (ECF No. 46 at 16.) Pacific also relies on the fact that the only insured listed on the policy is Jujamcyn and that the policy does not specify that the policy covered each Jujamcyn's five theaters individually. (*Id.*)

"The primary objective in contract interpretation is to give effect to the intent of the contracting parties 'as revealed by the language they chose to use.'" *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993) (quoting *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)). "The initial inquiry is whether the contractual language, without reference to sources outside the text of the contract, is ambiguous." *JGB (Cayman) Newton, Ltd. v. Sellas Life Scis. Grp. Inc.*, No. 18-CV-3095(DLC), 2018 WL

5266877, at *8 (S.D.N.Y. Oct. 23, 2018).  "Under New York law…the question of whether a written contract is ambiguous is a question of law for the court." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009).  The Second Circuit has explained that:

> "an ambiguous word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages[,] and terminology as generally understood in the particular trade or business[;] [c]onversely, ... contract language is not ambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion."

*Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 617 (2d Cir. 2001) (internal citations and quotations omitted).

The Court finds that the relevant language in the Pacific Policy is ambiguous.  Although "[p]arties to a contract may not create an ambiguity merely by urging conflicting interpretations of their agreement", *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993), the parties differing interpretations of the contractual language underlines the policy's ambiguity.

The essential term at issue here— "loss" — is undefined.  One reasonable interpretation of "loss" is that Jujamcyn suffered five losses when each of its five theaters suffered "performance disruption[s]" as a result of the COVID-19 orders and were each forced to close.  This is consistent with the stated "limit of liability" which specifies that $250,000 may be paid out for "each loss" caused by a "covered occurrence".  Another reasonable interpretation of "loss" is that Jujamcyn— the sole entity insured under the contract—suffered a singular loss as a result of the closures of its

theaters, caused by the single "occurrence" of the COVID-19 pandemic.  Neither interpretation is clearly compelled by the plain language of the contract.

Pacific cites the Second Circuit's decision in *Newmont Mines* to support its interpretation that the Policy only covers a singular "loss" caused by a "covered occurrence"; however, the case is disguisable on its facts.  In *Newmont Mines*, an insured sought coverage for losses from the collapse of two sperate portions of its roof following a snowstorm.  *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127 (2d Cir. 1986).  The insurance company appealed a jury verdict in the insured's favor.  *Id.*  The insured argued that the collapses constituted two separate "occurrences" from which it suffered losses and for which it was owed sperate payments under the policy at issue.  *Id.* at 134.  The insurance company contended that because the two collapses were caused by the same snowstorm, it constituted a single "occurrence" under the policy.  *Id.*  The Second Circuit, looking at the temporality of the two collapses, decided not to overturn the jury's finding that the collapses constituted two separate occurrences within the meaning of the policies because of the length of time that elapsed between the two events.  *Id.* at 137.  Based on this holding, Pacific argues that because the five theaters closed at the same time as a result of the same occurrence, Jujamcyn only suffered one loss.

However, the Second Circuit's holding is not instructive here.  First, the Pacific Policy is a "performance disruption" policy, not a property insurance policy as was the case in *Newmont Mines*.  Furthermore, *Newmont Mines* examined the meaning of the term "occurrence" as it appeared in that insurance policy because the liability under that policy was limited to a dollar amount "per occurrence".  *Id.* at 134.  Here, by contrast, the "limit of liability" is limited to "each loss".  Thus, the ambiguity in the policy is about the term "loss" as used in the Pacific Policy, not about "occurrence".  The relevant question is not about the timing of Jujamcyn's theater closures,

but rather whether the term "loss" was intended by the parties to cover "each loss" suffered by the five Jujamcyn theaters or the single "loss" caused by the theater closures to the Jujamcyn company as a whole.

Jujamcyn, on the other hand, concedes that the Pacific Policy is ambiguous, but asks the Court to resolve this ambiguity in its favor, relying on the principle that ambiguities in policy language "must be resolved against the insurer and in favor of coverage." (ECF No. 44 at 7 (citing *Great Am. Ins. Co. v. Houlihan Lawrence, Inc.*, 449 F. Supp. 3d 354, 366 (S.D.N.Y. 2020).) Plaintiff relies primarily on cases analyzing the meaning of a contract on summary judgment, rather than a motion for judgment on the pleadings, where courts considered extrinsic evidence and applied canons of construction to resolve ambiguities in contractual language. *See, e.g., World Trade Ctr. Properties, L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154 (2d Cir. 2003); *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608 (2d Cir. 2001); *Westview Assocs. v. Guar. Nat. Ins. Co.*, 95 N.Y.2d 334 (2000).

However, "[a]mbiguous contracts usually present a question of fact inappropriate for resolution in a judgment on the pleadings." *Vayngurt v. Sw. Credit Sys., L.P.*, No. 16-CV-2261 (ARR)(VMS), 2016 WL 6068132, at *3 (E.D.N.Y. Oct. 14, 2016) (citing *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993)); *see also Smith v. New York*, No. 12-CV-4851 (ERK)(LB), 2014 WL 6783194, at *7 (E.D.N.Y. Dec. 2, 2014) ("Courts must deny motions for judgments on the pleadings when predicated on ambiguous contract terms."); *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10-CV-1615 (CM), 2011 WL 3273487, at *5 (S.D.N.Y. July 29, 2011)); *JGB (Cayman) Newton, Ltd.*., 2018 WL 5266877, at *8 ("If an ambiguity exists, then a court may consider extrinsic evidence to determine its meaning… Because such evidence involves factual disputes, however, it is generally inappropriate for resolution on a

14

motion to dismiss or for judgment on the pleadings.") Here, there is potential extrinsic evidence that could help elucidate the parties' intent and the meaning of the Pacific Policy, rendering judgment as a matter of law as to the meaning of the Pacific Policy inappropriate at this juncture. *See Lorterdan Prop. At Ramapo I, LLC v. Watchtower Bible and Tract Society of New York, Inc.*, No. 11-CV-3656, 2012 WL 2873648, at *12 (S.D.N.Y. Jul. 10, 2012) ("Under New York law, the court decides the meaning of an ambiguous contract if there is no extrinsic evidence as to the contract's meaning.") (internal citations omitted).

Accordingly, Plaintiff's and Defendant's motions for judgment on the pleadings as to this issue are both denied.

B. <u>Breach of the Implied Covenant of Good Faith and Fair Dealing and Declaratory Judgment</u>

Defendants also ask the Court to dismiss Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and declaratory judgment because they are duplicative of Plaintiff's breach of contract claim. (ECF No. 53 at 9.)

First, the Court finds that Plaintiff's good faith and fair dealing claim is duplicative of its breach of contract claim. As discussed previously, "a claim that defendant has breached the duty of good faith can only survive a motion to dismiss if it is based on allegations that differ from those underlying an accompanying breach of contract claim." *County of Orange*, 2014 WL 1998240, at *2 (citing *Palmer Kane LLC v. Scholastic Corp.*, No. 12 Civ. 3890(TPG), 2014 WL 1303135, at *6 (S.D.N.Y. Mar.31, 2014)). As pleaded, Plaintiff's breach of the implied covenant of good faith and fair dealing claim is entirely predicated on Pacific's denial of what Plaintiff believes is the full limit of liability due under the contract. Because these claims are based on the same factual elements, Plaintiff's cause of action for breach of the implied covenant of good faith and fair

15

dealing is dismissed. *See Boart Longyear Ltd. v. All. Indus., Inc.*, 869 F. Supp. 2d 407, 416 (S.D.N.Y. 2012).

The Court also finds that the declaratory judgment claim is duplicative of Plaintiff's breach of contract claim. A declaratory judgment is appropriate where: "(1) [] the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) [] a judgment would finalize the controversy and offer relief from uncertainty." *Optanix, Inc. v. Alorica Inc.*, No. 1:20-CV-09660-GHW, 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021) (citing *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005)). However, "[c]ourts reject declaratory judgment claims 'when other claims in the suit will resolve the same issues,' because, under such circumstances, a declaratory judgment will not serve any useful purpose." *Id.* (citing *EFG Bank AG v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018)).

Here, the declaratory judgment cause of action is clearly duplicative of Plaintiff's cause of action for breach of contract. Because "[t]he claim for declaratory judgment would not clarify any uncertainty in the parties' legal relations that would otherwise remain unresolved as part of the breach of contract claim", declaratory judgment would serve no purpose. *Id.* at *4. Accordingly, the declaratory judgment claim against Pacific is also dismissed.

C. <u>Motion to Strike Pacific's Affirmative Defenses</u>

Lastly, Plaintiff moves to strike Pacific's eleventh, twelfth, thirteenth, fifteenth and sixteenth affirmative defenses. (ECF No. 44 at 14–16.) Specifically, Plaintiff argues that these affirmative defenses were waived because "Pacific never previously insinuated that Jujamcyn failed to honor any contractual obligation, cooperate or mitigate its losses" when it paid the

16

$250,000 pursuant to the policy. (*Id.* at 15.) Plaintiff also contends that Pacific fails to satisfy the "plausibility standard" for these defenses. (*Id.* at 16.)

Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored and will not be granted "unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984) (internal quotation marks and citations omitted), *overruled on other grounds by Salcer v. Envicon Equities Corp.*, 478 U.S. 1015 (1986). The test for striking an affirmative defense is three-pronged: "(1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." *Colonial Funding Network v. Epazz, Inc.*, 252 F.Supp.3d 274, 288 (S.D.N.Y. 2017) (internal quotation marks and citations omitted). In determining whether to grant the motion to strike, a court will "deem the non-moving party's well-pleaded facts to be admitted, draw all reasonable inferences in the pleader's favor, and resolve all doubts in favor of denying the motion to strike." *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07-cv-9580 (HB), 2008 WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008).

The Court finds that Plaintiff has not made this showing. As an initial matter, Plaintiff merely states, in conclusory fashion, that Pacific's affirmative defenses are implausible because they "illuminate [] Pacific's bad faith motives and potentially frivolous conduct." (ECF No. 44 at 16.) Plaintiff does not otherwise elucidate why these affirmative defenses are implausible and has not demonstrated that there are no substantial facts or law that would allow this defense to succeed

17

or that Plaintiff would be prejudiced by inclusion of these defenses. *See Colonial Funding Network*, 252 F. Supp. 3d at 288. Likewise, Plaintiff's argument that these affirmative defenses were somehow "waived" because they were not included in the claim denial is unavailing. (*Id.* at 14.) As Pacific notes, it never tendered a claim denial to Jujamcyn because it paid the amount it thought was owed pursuant to the policy. (ECF No. 50 at 9.) Accordingly, Plaintiff's motion to strike is denied.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings is **DENIED** and Defendants' motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

- Defendants' motion for judgment on the pleadings is **granted** in full as to the claims against Federal;
- Defendants' motion for judgment on the pleadings is **granted** as to the breach of the implied covenant of good faith and fair dealing and declaratory judgment claims against Pacific;
- Defendant Pacific's motion is **denied** regarding breach of contract; and
- Plaintiff's motion for judgment on the pleadings and motion to strike is **denied** in full.

The Clerk of Court is respectfully requested to terminate the pending motions at ECF Nos. 43 and 45 and enter judgment in favor of Defendant Federal.

**SO ORDERED.**

**Dated:**     **New York, New York**
              **March 6, 2023**

                                                      **ANDREW L. CARTER, JR.**
                                                      **United States District Judge**